UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VICTORIA HUNT,

        Plaintiff,

   v.

MICHAEL J. ASTRUE,
Commissioner of Social Security Administration,

        Defendant.
_____/

No. C 06-06282 MHP

**MEMORANDUM & ORDER**
Re: Cross-Motions for Summary Judgment

    Victoria Hunt ("plaintiff") seeks judicial review pursuant to 42 U.S.C. section 405(g) of the Commissioner of Social Security's ("Commissioner") finding that Hunt is not due benefits for her alleged incapacity to work. Now before the court is plaintiff's appeal of that decision and her motion for summary judgment, as well as the Commissioner's cross-motion for summary judgment. Having considered the parties' submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

I.    Factual History

    Plaintiff was born on November 10, 1949. Certified Administrative Transcript ("Tr.") at 342. She has a college education and has worked as a services coordinator, director and counselor for several drug and alcohol rehabilitation facilities and social service agencies. In March 2003 plaintiff fell into a pothole, severely injuring herself and, as a result, underwent surgery the following month to treat a fractured wrist. Despite positive progress initially, plaintiff did not

complete post-surgery treatment because she lacked health insurance and her subsequent check-ups showed decreased improvement. Tr. at 343–44. Throughout the administrative hearing plaintiff wore a wrist brace and claimed to suffer from continuing sharp wrist pain which limited her ability to complete household chores. She also testified that at the time of the hearing she was taking Norco, Fosamax and Vicodin for the pain. Tr. at 356. She also suffers from osteoporosis.

In addition to her physical injuries, plaintiff has suffered from depression. She was hospitalized in 1991 following an attempted suicide, started taking Prozac in 2002 and was placed on Lexapro in December 2003. Plaintiff testified that Lexapro "changed [her] life." Tr. at 246. She has not sought additional mental health treatment since March 2003. Tr. at 383. Due to her physical injury and mental health history, plaintiff claims she has been unable to work since March 27, 2003.

II.  Procedural History

Plaintiff filed for social security benefits on August 15, 2003. Her application was denied both initially and then on reconsideration. On March 8, 2005, after hearings on two separate days, Administrative Law Judge Richard P. Laverdure ("ALJ") held that Hunt was not disabled under the meaning of the Social Security Act ("SSA"). The Appeals Court declined to review this decision, leaving the ALJ's denial of benefits intact. On March 13, 2007 plaintiff filed a timely petition for review of the Social Security Administration's decision with this court.

Hunt, and her doctors, testified to the above facts before the ALJ. In particular, Dr. Wolfe and Dr. Kelly gave testimony detailing the condition of plaintiff's wrist and her mental state. When evaluating plaintiff's claim, the ALJ found that she had suffered a severe injury after fracturing her wrist, and also found that she had a severe fracture to her left wrist, osteoporosis and depression. Tr. 17. Following this, the ALJ held that plaintiff still had "the residual functional capacity to perform light work," which entails lifting no more than 20 pounds at a time, and limits frequent lifting or carrying objects ten pounds or less. Id. The ALJ also found that plaintiff was restricted from performing work with complicated instructions or tasks and could no longer continue with her former employment. Id. Nonetheless, the ALJ found plaintiff could still perform a significant number of jobs and therefore did not qualify for disability.

2

On November 10, 2004, however, the ALJ did award plaintiff benefits because she turned fifty-five and qualified as "of advanced age" under the SSA. Tr. at 21. The ALJ then determined, pursuant to the SSA, that Hunt was no longer expected to find additional work. See 20 C.F.R. § 404.1563 ("[A]dvanced age (age fifty-five or older) significantly affects a person's ability to adjust to other work."); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c) (if those of advanced age are restricted to light work only, a finding of disabled is warranted). In sum, the ALJ denied plaintiff benefits for the seven-and-a-half month period between March 27, 2003 — when her accident took place — and her fifty-fifth birthday on November 10, 2004.

LEGAL STANDARD

A district court may disturb the Commissioner's final decision "only if it is based on legal error or if the fact findings are not supported by substantial evidence." Sprague v. Brown, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993). Further, the term "substantial" requires "more than a mere scintilla" but "less than a preponderance." Magallanes v. Bowen, 881 F.2d 747, 750 (1989) (internal quotations omitted). Where evidence is susceptible to more than one rational interpretation the court must defer to the Commissioner's decision and may not substitute its judgment for the Commissioner's. Reddick v. Chater, 157 F.3d 715, 720–21 (9th Cir. 1998). The Commissioner's determinations of law, however, are reviewed de novo. See McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir. 2000). Thus, even if substantial evidence supports the ALJ's fact findings, his decision must be set aside if improper legal standards were applied in reaching that decision. See Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).

The SSA defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). The claimant has the burden of establishing a disability under the SSA. See, e.g., Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). To determine whether a

3

1   claimant meets this burden the ALJ engages in a five-step sequential analysis. 20 C.F.R. §
2   404.1520. If the ALJ determines that the claimant is not disabled at any step, he need not advance to
3   the next. Id. § 404.1520(a)(4 ). At the first step the ALJ determines if the claimant is engaged in
4   "substantial gainful activity" — if so, he or she will not be found disabled. Id. § 404.1520(a)(4)(I).
5   At step two the ALJ considers the medical severity of the claimant's impairments. Id. §
6   404.1520(a)(4)(ii). If the claimant's medically determinable impairment is not severe, the claimant
7   will not be found disabled. Id. At step three the ALJ will evaluate whether the claimant's
8   impairment, or combination of impairments, is in line with those listed in Appendix 1 of subpart P.
9   Id. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App. 1. At step four the ALJ considers
10  whether the claimant is able to perform past relevant work. Id. § 404.1520(a)(4)(iv). Id. Finally, at
11  the fifth step the ALJ considers whether the claimant's impairment, or combination of impairments,
12  prevents him or her from performing other work that exists in significant numbers in the national
13  economy. Id. § 404. 1520(a)(4)(v). At issue in the present action is only the fifth step of analysis.
14         In the context of social security hearings, failure to provide specific, cogent reasons for
15  discounting a witness' testimony is a reversible error. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th
16  Cir. 2005); Lewis v. Apfel, 236 F.3d 505, 510–11 (9th Cir. 2002). Additionally, as the Ninth Circuit
17  has made clear, the ALJ must detail clear and convincing reasons — and have evidentiary support
18  — for disregarding an uncontradicted opinion of a treating or examining doctor. Lester v. Chater,
19  81 F.3d 821, 830–31 (9th Cir.1995). If, however, the doctor's opinion is contradicted, the court may
20  reject it if substantial evidence supports the decision and clear reasons for the holding are provided.
21  Id.

23  DISCUSSION
24         Plaintiff levels three claims against defendant, all of which center around the allegation that
25  the ALJ lacked substantial evidence to support the decision to deny Hunt benefits. The first two
26  claims challenge the ALJ's factual findings — his rejection of Dr. Kelly's testimony regarding
27  plaintiff's need to use a sling and also his rejection of vocational expert Mr. Brodzinsky's answers to
28  hypothetical questions posed by plaintiff's counsel — and the third claim contends that the ALJ

4

incorrectly evaluated the work available to plaintiff in his fifth step of evaluation.  Defendant counters each of plaintiff's arguments by noting factual and procedural bases on the record that support the ALJ's decision.  The court will address each in turn.

I.      Dr. Kelly's Opinion

Plaintiff argues that the ALJ did not provide sufficient support for his evaluation of Dr. Kelly's testimony, which stated that plaintiff "[s]hould be also allowed to wear the left upper extremity sling as needed for comfort.  However, she should be encouraged to reduce use of this sling to assist with increased shoulder motion."  Pl.'s Mot. at 19.  In rejecting this portion of the doctor's opinion, the ALJ stated that he found "no credible basis for positing that the claimant, for the requisite 12-month duration period, must be allowed to place her left arm in a sling 'at will' for comfort, much less that it be in a sling 100% of the workday."  Id.  Plaintiff argues that this rejection of Dr. Kelly's testimony is inappropriate because (1) the court provided no evidentiary support from other sources to bolster this conclusion and (2) if the ALJ had doubts about the necessity of a sling, he should have contacted Dr. Wolfe or Dr. Kelly to ask for supporting evidence.

Plaintiff's argument is fatally flawed, however, because (1) the ALJ did have evidence to support his evaluation of Dr. Kelly's factual evaluation and (2) the ALJ had no duty to clarify this testimony.  As defendant points out, Dr. Kelly testified only six months after plaintiff's surgery and did not definitively state that Hunt needed to wear the sling for the 12 months required by law.  See 42 U.S.C. 423(d)(1)(A).  Further, the other examining doctors — Dr. Wolfe, her chiropractor and the state agency physicians — did not mention plaintiff's need to wear a sling.  Def.'s Reply at 5–6.  This absence of corroborating evidence, and Dr. Kelly's lack of a time frame, is sufficient to support the ALJ's decision.  See Nikitchuk v. Astrue, No. 05-16220, 2007 WL 1852346, at *1 (9th Cir. June 26, 2007) (supporting court's inferences drawn from the "lack of medical evidence"); see also Matthews v. Astrue, No. 06-5151, 2007 WL 1290155, at *3 (10th Cir. May 3, 2007) ("Given the lack of medical proof in the record, we conclude the ALJ's adverse credibility finding was supported by substantial evidence.").  Additionally, while some portions of defendant's analysis on this subject are less detailed than might be desired, the ALJ does not have a duty to develop the record when the

5

evidence presented is unambiguous. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). In the present action, Hunt put forth scant but straightforward facts; accordingly, the lack of evidence is a defect in Hunt's case and not a mistake by the ALJ. The claimant bears the burden of establishing her disability, which the testimony of Dr. Kelly fails to do. See Webb, 433 F.3d at 686; Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). Even if Hunt were to present another reasonable interpretation of Dr. Kelly's testimony the court must defer to the ruling of the ALJ if more than one interpretation of the facts exists. See Reddick, 157 F.3d at 720–21.

II.     Mr. Brodinsky's Opinion

Plaintiff also contends that the ALJ's decision should be reversed because he relied on incomplete hypothetical questions posed to the vocational expert, Mr. Brodzinsky. The ALJ characterized plaintiff's limitations less severely than Dr. Wolfe, and asked the vocational expert to describe the work available to someone with an inability to perform complex tasks or follow complex instructions. However, when the plaintiff's attorney asked Mr. Brodzinsky to consider Dr. Wolfe's complete Medical Source Statement, he testified plaintiff would not be able to perform any of the alternate occupations he had previously suggested. Pl.'s Mot. at 21–22. The questions posed by plaintiff's council added two specific conditions: (1) Hunt's need to wear a sling most of the time, as alleged by Dr. Kelly, and (2) all of the mental limitations in Dr. Wolfe's assessment, including a few which would interfere with Hunt's ability to maintain attention for long periods of time, to complete a normal workday and to be socially appropriate. Id. at 21. Plaintiff argues insufficient weight was given to these factors and the ALJ's decision should therefore be overturned.

However, "the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by claimant's counsel." Magallanes, 881 F.2d at 756. Instead, the ALJ has the ability to discount the answers as long as this decision is supported by substantial evidence. Id. at 757; Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1986).

In the present action the ALJ had the requisite evidentiary support to disregard both of the additional impairments described by plaintiff's attorney in his questions to Mr. Brodzinsky. As previously discussed, the ALJ's reasons for not supporting Dr. Kelly's assessment of Hunt's need to

use a sling are substantially supported by the record.  Similarly, the ALJ's reasons for modifying Dr. Wolfe's evaluation of plaintiff's mental capacity is supported.  The ALJ evaluated Dr. Wolfe's opinion and, by supplementing it with plaintiff's own testimony, found that Dr. Wolfe had overstated her limitations.  The ALJ could have disregarded Dr. Wolfe's opinion completely and sided with the state agency psychiatrists who characterized plaintiff's mental problems as "nonsevere."  Def.'s Reply at 7; Pl.'s Mot. at 20.  Instead, the ALJ relied on plaintiff's testimony that Lexapro improved her condition and, in line with Ninth Circuit precedent, modified his evaluation of her condition.  In Sample v. Schweiker, 694 F.2d 639, 644 (9th Cir. 1982), for example, the court held that it was well within the ALJ's purview to find,  in conjunction with claimant's testimony and contrary to a doctor's testimony, that the mental impairment in question was improved by medication, and was therefore not disabling.  The same interpretation in the present action is also rational, and therefore need not be overturned.  In sum, the ALJ properly carried out his duty to evaluate the medical evidence presented and properly supported his determinations with evidence from the record.  See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (upholding ALJ's evaluation of doctor's credibility because it was properly supported and characterizing this task as a basic part of ALJ's role).

That said, the ALJ's argument that plaintiff had not received other mental health treatment does not support his finding.  The Ninth Circuit recently held that a claimant's "failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding."  Orn v. Astrue, ___ F.3d ____, 2007 WL 2034287, at *12 (9th Cir. July 16, 2007).  Plaintiff continues to be without health insurance, as she was at the time of her initial wrist operation.  Pl.'s Mot. at 9.  For this reason, the ALJ cannot rely on the fact that she did not receive additional treatment to discredit Dr. Wolfe's evaluation.  This defect is not dispositive, however, because the ALJ also relied on the additional evidence discussed above to support his determination.

III.   Stage Five Analysis

7

1 Plaintiff also alleges that the ALJ erred in finding her not disabled at the fifth step of
2 evaluation because he improperly assessed the alterative occupations available to her.  At step five
3 the ALJ must demonstrate that a significant number of alternate occupations are available to plaintiff
4 in a national economy.  C.F.R. 20 § 404.1560(c)(2); Id. 404. 1520(a)(4)(v).  E.g., Andrews v.
5 Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).  The ALJ can meet this responsibility by basing his
6 decision on the responses of the vocational expert, provided that all of plaintiff's ailments are
7 included in any hypothetical question.  Id. at 1043; Magallanes, 881 F.2d at 756.  In the present
8 action, Mr. Brodzinsky responded to the ALJ's questions by stating that approximately 36,000
9 positions were available to plaintiff regionally (i.e., Cashier II, Order Clerk in Food and Beverage,
10 Telephone Quote Clerk, etc., all of which were in accordance with plaintiff's limitations).  Pl.'s Mot.
11 at 22–23.  Plaintiff argues that a number of these positions are part-time according to the Department
12 of Labor, eroding Mr. Brodzinsky's assessment of available positions to insignificant numbers.
13 Plaintiff's argument is unpersuasive, however.  When the ALJ questioned Mr. Brodzinsky, he did
14 not limit plaintiff to part-time work.  Instead, he simply asked what positions would be available to
15 someone with an inability to follow complex instructions.  It is reasonable to assume, therefore, that
16 the vocational expert limited his response to full-time positions, as would normally be required.

17 Even if the vocational expert's assessment were to be eroded to only include occupations
18 classified as Cashier II, as plaintiff suggests it should be, the ALJ would still have met his burden at
19 step five.  According to plaintiff, 25,000 such jobs are available regionally, which also supports the
20 ALJ's finding that a significant number of alternative occupations exist.  Pl.'s Mot. at 22–23.  See
21 Moncada v. Chater, 60 F.3d 521, 524 (9th Cir, 1995) (2,300 jobs in local region is significant);
22 Thomas, 278 F.3d at 960 (1,300 jobs in local region is significant); Baker v. Secretary of Health and
23 Human Services; 882 F.2d 1474, 1478–79 (9th Cir. 1989) (1,266 jobs in local region is significant).

24 In conclusion, the ALJ's questions to the vocational expert, and his assessment of Mr.
25 Brodzinsky's responses, provide substantial support to his evaluation of plaintiff's occupational
26 capabilities.  Even accepting plaintiff's more limited view of the types of occupations available,
27 25,000 jobs still qualifies as significant under the law.

28

8

CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated:  August 6, 2007

MARILYN HALL PATEL
United States District Court Judge
Norther District of California

ENDNOTE

1. All facts cited herein are taken from the complaint unless otherwise noted.